**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edward Lee THOMAS et al., Defendants-
Appellants.**

**Nos. 71–1589 to 71–1597.**

United States Court of Appeals,
Tenth Circuit.

Oct. 13, 1972.

Rehearing Denied in Nos. 71–1589,
71–1590, 71–1596 Nov. 10, 1972.

Floy E. Dawson, Asst. U. S. Atty. (William R. Burkett, U. S. Atty., Oklahoma City, Okl., with him on the brief), for plaintiff-appellee.

John R. Couch, Jr., Stillwater, Okl., for defendants-appellants Thomas, Knox, Breath and Carter.

Ed McConnel, Oklahoma City, Okl., for defendant-appellant Phillips.

Frank R. Courbois, Oklahoma City, Okl., for defendants-appellants Dizer and Moore.

Bay, Hamilton, Renegar & Lees, Oklahoma City, Okl., for defendant-appellant Sturgeon (submitted on brief).

Horace Harold Chatman, Jr., pro se.

Before PICKETT, HILL and DOYLE, Circuit Judges.

PICKETT, Circuit Judge.

The indictment in this case charges that fifteen persons, including the appel-

lants Thomas, Knox, Phillips, Dizer, Breath, Sturgeon, Carter, Moore and Chatman, Jr., during the year 1970, conspired to violate 21 U.S.C. § 174 (1964) (repealed in part and re-enacted in part, Pub.L. 91–513, Oct. 27, 1970),[1] which prohibits the importation, receipt, concealment, purchase, sale or transportation of narcotics. In the course of the trial, codefendants Bolden and Jordan were granted immunity from prosecution and testified for the Government. Defendant Bustos waived jury trial and also testified for the prosecution. Defendant Chatman, Jr. withdrew his plea of not guilty and entered a plea of guilty. Defendant Joe Ben Webb had not been apprehended at the time of trial. All defendants whose cases went to the jury were convicted.

The appellants submitted separate briefs raising a variety of claims of error. Contentions are made that § 174 is unconstitutional; that the evidence is insufficient to establish a continuing conspiracy and that each appellant knowingly joined it; that proof of possession of heroin is insufficient to invoke the inference of knowledge of illegal importation; that prejudicial hearsay evidence was admitted during the trial; and that the court erred in advising the jury that a codefendant had entered a plea of guilty during the trial. Defendant Chatman, Jr. contends that in accepting his plea of guilty the court failed to comply with the requirements of Rule 11, Fed.R.Crim.P.

A subsequent conviction of Joe Ben Webb was affirmed by this court. United States v. Webb, 466 F.2d 190 (10th Cir. 1972). Some of the issues presented here were settled in the *Webb* decision. There the statute was held to be constitutional, including the provision that possession of narcotics is sufficient to sustain an inference of its unlawful importation. The court also held that similar evidence was sufficient to sustain the existence of a continuing conspiracy during the time alleged. The court recognized the rule that testimony of coconspirators was not excludable because it was hearsay and that a conviction can be sustained on the uncorroborated testimony of coconspirators or accomplices after cautionary instructions by the court. Cf. United States v. Birmingham, 454 F.2d 706 (10th Cir. 1971).

The prosecution offered testimony of three codefendants and one coconspirator who was not included in the indictment. This evidence was sufficient to show that throughout the year 1970 Joe Ben Webb was the king pin of an operation that sold substantial quantities of heroin in the Oklahoma City, Oklahoma area. The evidence discloses that during the year 1970 the codefendants were in and out of the Webb operation and that at various times each participated in the sale of narcotics received from Webb, or in making deliveries for sale and the collection of the proceeds therefrom.

A conspiracy is an agreement between two or more persons to commit one or more unlawful acts, and is complete when one or more of the conspirators knowingly commit an act in furtherance of the object of the agreement. Braverman v. United States, 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23 (1942); Goldsmith v. Cheney, 447 F.2d 624 (10th Cir. 1971); Jordan v. United States, 370 F.2d 126 (10th Cir. 1966), cert. denied, 386 U.S. 1033, 87 S.Ct. 1484, 18 L.Ed.2d

---

1. "[W]hoever fraudulently or knowingly . . . receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any . . . narcotic drug after being imported or brought in [the United States], knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years. . . . Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

595 (1967). The agreement need not be express, nor in any particular form. It is sufficient "if the minds of the parties meet and unite in an understanding way with the single design to accomplish a common purpose. . . ." Martin v. United States, 100 F.2d 490, 495 (10th Cir. 1938). "The proof necessary to support a conviction for conspiracy is necessarily not. direct. The nature of the offense and the secrecy involved require that the elements of the crime be established by circumstantial evidence, and the common purpose or plan may be inferred from the development or the combination of circumstances." *Jordan,* supra, 370 F.2d at 128. See also Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Baker v. United States, 329 F.2d 786 (10th Cir. 1964), cert. denied, 379 U.S. 853, 85 S. Ct. 101, 13 L.Ed.2d 56 (1964); Dennis v. United States, 302 F.2d 5 (10th Cir. 1962). "Generally convictions will be sustained if the circumstances, acts and conduct of the parties are of such character that the minds of reasonable men may conclude therefrom that an unlawful agreement exists." Jones v. United States, 365 F.2d 87, 89 (10th Cir. 1966), citing Jones v. United States, 251 F.2d 288, 290 (10th Cir. 1958). See also United States v. Birmingham, 454 F.2d 706 (10th Cir. 1971); United States v. Winn, 411 F.2d 415 (10th Cir. 1969), cert. denied, 396 U.S. 919, 90 S.Ct. 245, 24 L.Ed.2d 198 (1969); O'Neal v. United States, 240 F.2d 700 (10th Cir. 1957). A party may join a conspiracy during its progress and be held responsible for all acts in furtherance of the scheme. United States v. Cimini, 427 F.2d 129 (6th Cir. 1970), cert. denied, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970); United States v. Cerrito, 413 F.2d 1270 (7th Cir. 1969), cert. denied, 396 U.S. 1004, 90 S.Ct. 554, 24 L.Ed.2d 495 (1970); United States v. Doran, 299 F.2d 511 (7th Cir. 1962), cert. denied, 370 U.S. 925, 82 S.Ct. 1563, 8 L.Ed.2d 504 (1962); · Poliafico v. United States, 237 F.2d 97 (6th Cir. 1956).

■ Sturgeon, Moore, Breath and Phillips specifically urge that there is insufficient evidence to connect them with the conspiracy. The record shows that there was only one continuing scheme to sell and distribute heroin in Oklahoma City, Oklahoma, and that the appellants Sturgeon, Moore and Phillips, were active participants. Each dealt with the central conspirators on numerous occasions regarding the eventual resale of the narcotics. Whether they knew the full extent of the conspiracy and all of its activities and actors is immaterial. The evidence is adequate to sustain the convictions of Sturgeon, Moore and Phillips. We reach a contrary conclusion as to appellant Breath.

■ Breath is a sister of Joe Ben Webb. She probably knew of Webb's operations and on one occasion introduced Chatman and Knox to one of the coconspirators "to talk about some business." There is no evidence concerning the nature of this business. "A single act may be the foundation for drawing the actor within the ambit of a conspiracy. . . . But, since conviction of conspiracy requires an intent to participate in the unlawful enterprise, the single act must be such that one may reasonably infer from it such an intent." United States v. Aviles, 274 F.2d 179, 189 (2d Cir. 1960); United States v. Agueci, 310 F.2d 817 (2d Cir. 1962). There is no evidence, however, showing that Breath intended to participate in the brother's operation and none from which such intent could be reasonably inferred. To sustain a conviction there must be evidence showing that an accused knowingly acted to further the enterprise. "Guilt may not be inferred from mere association." Glover v. United States, 306 F.2d 594, 595 (10th Cir. 1962). "Mere knowledge, approval or acquiescence in the object or purpose of a conspiracy does not make one a conspirator." Dennis v. United States, 302 F.2d 5, 12 (10th Cir. 1962). There is no proof that Breath possessed or sold any narcotics or took part in the heroin activities of her brother.

In their investigation of this case, agents of the Bureau of Narcotics and Dangerous Drugs made, through an informer, a purchase of heroin from the defendant Chatman. At the trial, one of the agents stated that the informer proceeded to the living quarters of Chatman and returned a very short time thereafter with some heroin capsules, the purchase of which "was to have been made from Chatman." It is urged that this statement was hearsay and prejudicial. In the context in which it was made the testimony was not hearsay, and if otherwise objectionable, was not prejudicial to any defendant, with the possible exception of Chatman, who had entered a plea of guilty. United States v. Williams, 445 F.2d 421 (10th Cir. 1971), cert. denied, 404 U.S. 966, 92 S.Ct. 342, 30 L.Ed.2d 286 (1971).

While the trial was in progress Chatman was permitted to withdraw his plea of not guilty and his plea of guilty was accepted without the presence of the jury. Prior to submitting the case, the court advised the jury that some of the defendants were no longer in the case. The court stated that Chatman had entered a plea of guilty, and further stated to the jury that "you cannot draw any inference as to guilt or innocence of any of the other defendants by reason of this plea of Mr. Chatman." We find no merit in the contention that this was prejudicial error. It was nothing more than an explanation to the jury that certain defendants, including Chatman, were no longer participants in the trial. United States v. Jones, 425 F.2d 1048 (9th Cir. 1970), cert. denied, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970).

Appellant Chatman challenges the validity of his plea of guilty and the judgment and sentence entered thereon upon the ground that the trial court did not comply with the requirements of Rule 11, Fed.R.Crim.P., prior to accepting the plea. The necessity for strict compliance with Rule 11 is demonstrated by the decisions of the Supreme Court of the United States and of this court. McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); United States v. Birmingham, 454 F.2d 706 (10th Cir. 1971); Holt v. United States, 435 F.2d 1278 (10th Cir. 1970), cert. denied, 404 U.S. 868, 92 S. Ct. 136, 30 L.Ed.2d 112 (1971);[2] United States v. Sanders, 435 F.2d 1282 (10th Cir. 1970). The provisions of the rule require the district judge, not someone else, before accepting a plea of guilty, to personally address the accused and determine "that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." The rule further provides that "[t]he court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." The purpose of these provisions is discussed in the foregoing cases, particularly *McCarthy*. To satisfy the rule, the record must show that the trial judge personally asked the proper questions and received answers from the accused indicating his awareness of the charge against him and the consequences of his guilty plea. The judge may not assume from circumstances within his knowledge that the accused is fully aware of these conditions. Although Chatman stated that the plea was made voluntarily and without any threats or promises, no explanation was made to him concerning the nature of the conspiracy charge and there was no indication that Chatman was fully aware of what constituted a conspiracy.[3] The record here is not sub-

---

2. In the *Holt* case the sentence was allowed to stand because the 1966 amendments to Rule 11 were not retroactive.

3. With reference to the rule's purposes, the court in *McCarthy* stated:

"These two purposes have their genesis in the nature of a guilty plea. A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment

stantially different from that of the *McCarthy* case or those where this court has considered the same question and held that the provisions of Rule 11 had not been satisfied.

The judgment concerning all appellants except Breath and Chatman is affirmed. The judgment and sentence against appellant Breath is reversed and the case remanded with instructions to dismiss. Judgment and sentence against appellant Chatman is reversed and remanded with instructions to permit him to plead anew.

or abandonment of a known right or privilege.' *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." 394 U.S. at 466, 89 S.Ct. at 1171.