BARHAM, Justice
(dissenting).
The defendant entered a guilty plea to the charge of theft of an automobile valued in excess of $100.00. The trial *128 judge made a voir dire examination to determine whether the defendant’s plea was knowing and voluntary. After the judge complied with the Boykin requirements of ascertaining that the defendant waived his constitutional rights, the inquiry continued to determine whether the defendant was actually guilty of the crime with which he was charged — that is, whether every element of the crime was a part of the act which brought him before the bar of justice. In this inquiry the defendant made known to the judge that an essential ingredient of theft, that is, the intent to permanently deprive'the owner of the thing misappropriated, was absent. The colloquy between the judge and the defendant was as follows:
“BY THE COURT:
“Q All right, Mr. Eastland. Bill number 85,809 charges you with auto theft. How do you plead ?
“A Guilty.
“THE COURT: All right, swear him in and let’s see if I can take his plea.
“EASTLAND RAY ALLEN, having been duly sworn, testified as follows:
“BY THE COURT:
“Q Come sit down and talk to me a while. State your full name for the record?
“A Eastland Ray Allen. Eastland Ray Allen.
“ * * *
“BY THE COURT:
“Q Mr. Allen—
“A Yes, sir.
“Q —I will probe you or ask you a series of questions. I don’t do this for the purpose of embarrassing you — it is an honest effort to be sure that you understand the consequences of your proposed guilty plea this morning. Because you give up very substantial rights afforded to you as a person accused of a crime by entering this guilty plea. I have to be sure that you understand the consequences, even though you have a lawyer I have to canvass this area for the sole purpose of these questions. Do you understand ?
“A Yes, sir.
“ * * *
“Q Yes, what do you understand you are charged with?
“A With car theft and theft.
“Q Well, the bill says commit a theft of a 1969 Dodge Charger, two-door hardtop valued at in excess of One Hundred Dollars, which puts it in the felony category. I want to read to you Article 67 of the Criminal Code, and I quote:
t< * % *
“In other words, theft — if you take something of value that belongs to somebody *130 other than yourself — either by means of fraudulent conduct or representations, and at the time of the taking you intend not to return the object of the theft of the crime, these are known as the elements of the crime — taken without the consent and with the intent to permanently deprive and that it had some value. Now, specifically, on the third — on the second day of August, ’71, with reference to this ’69 Dodge Charger, did you engage in the conduct that’s prohibited by this Article?
“A I guess so, I don't understand what you are talking about.
“Q Did you take the car?
“A Yes, sir.
“Q Did you take it without the consent of the owner?
“A Yes, sir.
"Q Did the car have any value — was it worth anything?
“A Yes, sir.
“Q Was it worth more than a Hundred dollars ?
“A Yes, sir.
“Q All right, at the time you took it did you intend not to take it back to the owner ?
“A I really couldn't say.
“Q You don’t know?
“A I don’t know.
“Q At the time you were apprehended were yo%i on the zvay to reUirn it from where you had taken it?

“A Yes, sir.

“Q You were?

“A Yes, sir. The keys were in it.
“Q The keys were in it when you took it. How near were you to where you had taken it from when you were apprehended ?
“A You mean where did I get it from?
"Q Um-hum?
“A On the side of Prescott Body Shop.

“Q What were you doing at the time you were apprehended?

“A What was I doing?
“Q Um-hum?
“A You mean arrested?
“Q Um-hum ?

“A I was on my way back from New Orleans to Prescott Body Shop.

“Q You were going to put it back ?
“A Yes, sir.

“Q What prohibited you from putting it backf What stopped you from putting it back?

“A I got arrested.

“Q But for that arrest you were going to take it back?

“A Fes, sir.
*132 “Q Did anybody know you were going to take it back? Did you testify to that point?
“A No, sir.
“ * * * The maximum that could be levied would be ten years and a three thousand dollar fine. Pretty stiff. Being apprised of what the penalty is, do you still want to plead guilty?
“A Yes, sir.
“Q Are you doing this on advice of counsel?
“A No, on my own.
«* * *
“Q You don’t want the State to have to prove your guilt?
“A No, sir.
“Q You admit your guilt? I didn’t hear an answer.
“A Yes, sir. ■
“ * *' * All right, Eastland- Ray Allen, state for the record, how do -you plead to the charge of felony theft on the second day of August, 1971?
“A Guilty. '
“THE COURT: All right, record,his plea. Pll take.his plea.” (Emphasis, supplied.) .
Pretermitting a determination' 'of ‘whether the trial judge should-be required to ascertain from -the defendant himself the facts which brought him under- charge so as to determine whether they would support a plea of guilty to that charge, I am of the opinion that when the judge attempts to make such a determination, he is bound to respond to the information obtained. The plea is not a knowing one, absent other circumstances such as plea-bargaining, when an accused pleads guilty to an offense which, according to his statement of facts, he did not commit.
This record is devoid of any indication that the defendant insisted upon pleading guilty although he was not guilty. There is no evidence that there was a bargain for a reduced sentence. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, is not controlling of this situation. In Alford the defendant, declaring ’that, he was not guilty of the offense to which he pleaded, insisted upon entering the guilty plea because it was to his advantage not to risk a harsher charge and penalty: Moreover, the court pointed out in that case that the record contained strong evidence of actual guilt. Here the record contains a strong indication of innocence of this particular charge. • What is controlling of the plea' and what distinguishes this case from Alford is that this defendant did not know the elements of. the crime to which he pleaded and that the facts elicited from him denied the existence of one 'essential element. It is firmly established ,in .'the *134 jurisprudence that a plea of .guilty shall not he accepted unless made voluntarily after proper advice and with full understanding of the consequences. Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009; Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473; Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. Further, and more pertinent in this case, when the trial judge assumes the duty of ascertaining that the plea of guilty has basis in fact, that inquiry must reflect a complete understanding by the defendant, and assumptions not based upon recorded responses that defendant had such an understanding cannot stand. McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418; United States v. Cody, 438 F.2d 287 (8th Cir. 1971); United States v. Sanders, 435 F.2d 1282 (10th Cir. 1970); United States v. Tucker, 425 F.2d 624 (4th Cir. 1970); Scott v. United States, 135 U.S.App.D.C. 135, 419 F.2d 264 (1968); Schnautz v. Beto, 416 F.2d 214 (5th Cir. 1969); United States v. Rushing, 456 F.2d 1294 (5th Cir. 1972); Woodward v. United States, 426 F.2d 959 (3rd Cir. 1870); United States v. Monaco, 456 F.2d 254 (3rd Cir. 1972).
The trial judge should have refused the plea of guilty unless the defendant admitted he intended to permanently deprive the'owner of the automobile. Alternatively, the judge needed to ascertain that although the defendant-knew he was not guilty, after considered advice and with knowledge he was desirous of pleading guilty to a reduced charge or for a lesser sentence. This plea is unconstitutional.
I respectfully dissent.